UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELBY ACCELY,

                Plaintiff,

      -against-

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC., in its official capacity, ANDY
FEEHAN, in his official and individual capacity,
DARREN BRINDISI, in his official and individual
capacity, and THERESA KOHN, in her official and
individual capacity,

                Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2022
```

19 Civ. 5984 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

       Plaintiff, Welby Accely, brings this action against Defendants, his employer,

Consolidated Edison Company of New York, Inc. ("ConEd"), and his supervisors Andy Feehan,

Darren Brindisi, and Theresa Kong[1] (collectively, the "Individual Defendants"), alleging that he

was discriminated against on the basis of his race, subjected to a hostile work environment, and

retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et

seq.* ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); the New York State Human Rights Law, N.Y.

Exec. Law § 296 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin.

Code § 8-107 (the "NYCHRL"). *See* Compl, ECF No. 1. The parties cross-move for summary

judgment pursuant to Federal Rule of Civil Procedure 56.[2] ECF Nos. 102, 106. For the reasons

stated below, Defendants' motion is GRANTED in part, and DENIED in part, and Plaintiff's

motion is DENIED.

---

[1] In the complaint, Kong was incorrectly identified as "Kohn." *See* Compl. ¶ 13, ECF No. 1; 56.1 Stmt. at 1, ECF No. 95.

[2] Feehan expressly joined the other defendants' motion for summary judgment, opposition to Plaintiff's motion for summary judgment, and reply briefs filed in this case. *See* Defs. Mem. at 1 n.1, ECF No. 103; Defs. Opp'n at 1 n.1, No. 132; Defs. Reply at 1 n.1, ECF No. 137.

# BACKGROUND[3]

The parties dispute many of the events that give rise to this litigation. Plaintiff alleges that he experienced race discrimination, harassment, and retaliation since Feehan and Brindisi became his supervisors. *See, e.g.*, Pl. Aff. ¶¶ 6, 8, 15, 27, ECF No. 109-3.[4] Defendants deny these claims. *See, e.g.*, Defs. Mem., ECF No. 103.

Plaintiff, Welby Accely, a Black man, has been employed by ConEd from 1999 to the present. 56.1 Stmt. ¶¶ 1–2.[5] Over the years, he was promoted to various union positions, and, since June 2010, he has been a Construction Representative assigned to the Bronx Public Improvement Department ("BPI"). *Id.* ¶¶ 2–5. In June 2016, Darren Brindisi became Plaintiff's direct supervisor and, in September 2016, Andy Feehan became the supervisor of Plaintiff's group. *Id.* ¶¶ 9–10. Since April 2017, Theresa Kong was the general manager for BPI. Kong Dep. at 15, ECF No. 115-1.

Soon after Feehan became supervisor of Plaintiff's group, Plaintiff claims he raised his hand at a safety meeting and stated that he and others were having trouble keeping up with paperwork. 56.1 Stmt. ¶ 23; ECF No. 105-12. Plaintiff contends that after this incident, he had a "target on his back." 56.1 Stmt. ¶ 24; Pl. Dep. at 45–46, 293, ECF No. 112-1; ECF No. 105-12.

---

[3] The Court considers admitted for purposes of this opinion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Local Civ. R. 56.1(c). Citations to a paragraph in the Rule 56.1 statement also include the other party's response. Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

[4] Defendants ask the Court to disregard Plaintiff's affidavit. Defs. Reply at 3–4, ECF No. 137. Defendants contend that the affidavit is self-serving, conclusory, and contradictory. *Id.* The Court declines to do so. "In discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Plaintiff's affidavit recounts many of the events giving rise to this action. *See generally* Pl. Aff. The Court shall not "graft additional requirements onto [Federal Rule of Civil Procedure] 56(c)." *Danzer*, 151 F.3d at 57; Fed. R. Civ. P. 56(c).

[5] The Court shall regard ECF No. 95 as the parties' 56.1 statement. The difference between the version submitted by Plaintiff's counsel and the version submitted by Defendants' counsel is limited to footnote one. *See* ECF Nos. 97–101. The Court shall consider the footnote in the later filed 56.1 statement to represent Defendant Feehan's position. *See* ECF No. 100.

Plaintiff alleges that the workplace was segregated, with white male employees on one side and women and Black employees on the other.  Pl. Mem. at 22, ECF No. 110; *see also* Pl. Dep. at 145–46; ODI Report at 16; 56.1 Stmt. ¶¶ 82, 87.  Defendants do not contest Plaintiff's description of the seating arrangement in the BPI office.  Defs. Opp'n at 28; 56.1 Stmt. ¶ 82.

Plaintiff contends that Feehan caused the alleged segregation by "his action[s]."  Pl. Dep. at 146.  Defendants state that the Individual Defendants did not bring about the seating configuration because it predated them.  *See* Defs. Opp'n at 28; *see also* Rodriguez Dep. at 171, ECF No. 105-24; Brindisi Dep. at 539–41, ECF No. 118-1.[6]  Plaintiff testified that the seating arrangement started with a supervisor calling a subset of the employees—a white woman and Black men—the "shit crew."  Pl. Dep. at 121, 146.  He alleges that over time the culture eroded to the point of *de facto* segregation.  Pl. Dep. at 147; 154–55.  Plaintiff concedes employees could sit wherever they wanted, Pl. Dep. at 155; O'Hora Dep. at 44–45, ECF No. 105-15, and that none of the Individual Defendants directed employees where to sit, Pl. Dep. at 156.  He claims, however, that the seating arrangement was, in effect, permanent, with employees sitting in the same seats every day.  *Id.* at 155; O'Hora Dep. at 44.  Plaintiff also contends that it was maintained by statements from some of his co-workers, in particular, his shop steward, Rocco Talarico, who would say "get on your side, boy" as a "joke" if a non-white employee ventured onto the wrong side.  Pl. Dep. at 147, 155–56.

Plaintiff asserts that the alleged segregation was brought to the attention of Brindisi.  *Id.* at 149.  Plaintiff further testified that it was raised with Feehan, who proposed altering the seating configuration, a change that was rejected by the employees.  *Id.* at 147–48; *see also* Brindisi Dep. at 541.  There is also evidence that Kong worked in the BPI office or, at minimum,

---

[6] The page numbers are those assigned by ECF.

visited the office, and, therefore, would have seen the seating arrangement.  Brindisi Dep. at 221; Pl. Dep. at 37.  Plaintiff alleges that at some point seats were assigned by the union, through the shop stewards, to "mix up" the seating with regard to race.  Pl. Dep. at 154, 330–32.  He also contends that an email was sent requesting people sit on the other side, but it was unclear if the union or ConEd sent this email.  *Id.* at 152.

Plaintiff alleges that Brindisi and Feehan interfered with his overtime starting in 2016, resulting in a loss of income.  *See* Pl. Aff. ¶¶ 8–12; Pl. Mem. at 4, 8, 12, 15.  Plaintiff testified about one specific incident on April 28, 2018, but alleges that this incident was part of a larger pattern.  Pl. Dep. at 197.  He alleges that his managers prohibited him from using overtime to complete paperwork while allowing white workers to do so, *id*. at 457–62, and that Feehan manipulated his schedule to prevent him from being assigned field-based overtime, *id.* at 197–200.  Defendants counter that Plaintiff refused overtime, pointing to a passage in his deposition.  *See* Defs. Reply at 7.  Plaintiff states that after Feehan became his manager, Plaintiff stopped requesting overtime and sometimes refused overtime.  *See* Pl. Dep. at 457–60.

In October 2017, Plaintiff received his biannual evaluation.  Oct. 2017 Evaluation, ECF No. 105-7.  Although he was rated "satisfactory" overall, he received a "marginal" rating for work quantity.  *Id.*  Plaintiff filed a grievance in November 2017, stating that he was subjected to a "marginal on evaluation, harassment, intimidation and retaliation."  2017 Grievance, ECF No. 105-10; *see also* ECF No. 105-11.  The grievance was investigated and no action was taken. ECF Nos. 105-11, 105-13.

On February 7, 2018, an incident occurred between Plaintiff and Brindisi at the BPI office.  Pl. Dep. at 247–48.  Plaintiff states that Brindisi "saw [him] in the office and began attacking, yelling, and screaming" at him.  Pl. Aff. ¶ 22.  By contrast, Brindisi claims that he

4

inquired as to Plaintiff's progress on his work, and Plaintiff had an outburst and started yelling and cursing at Brindisi.  Brindisi Dep. at 33–36, 191.  After the incident, Plaintiff suffered a mental health emergency and went to an emergency room, after ConEd's medical center directed him to call an ambulance rather than travelling by car to the ConEd medical center, and ConEd's wellness center provided Plaintiff with information for a facility that could see him.  Pl. Dep. at 174, 177, 179.  He was on medical leave from February 8 to March 23, 2018.  *Id.* at 180.

While on leave, Plaintiff filed a complaint with ConEd's Office of Diversity and Inclusion ("ODI").  ODI Intake I, ECF No. 105-16.  He claimed to have been discriminated against and harassed by management based on his race.  *Id.*  He named Brindisi and Feehan as the perpetrators.  *Id.*  Upon Plaintiff's return, he received his February 2018 evaluation, in which he scored an overall "satisfactory" rating with "marginal" ratings for work quality and cooperation.  Feb. 2018 Evaluation, ECF No. 105-8.  On March 28, 2018, Plaintiff received a verbal warning for insubordination and unsatisfactory work performance for the February 7th incident.  56.1 Stmt. ¶ 49.

On March 29, 2018, Plaintiff filed another grievance requesting ConEd "to remove marginal from my last two progress report[s,] [t]o remove all false allegations regarding my work ethic[,] [t]o stop harassment, discrimination against me, and stop retaliation and remove verbal."  *See* 2018 Grievance, ECF No. 105-17.  Again, the grievance was investigated and no action was taken.  ECF Nos. 105-18, 105-20.

In July 2018, Plaintiff was eligible for a wage increase, but he did not receive it immediately.  Pl. Dep. at 202–04; Kong Dep. at 102–03.  Kong testified that human resources was responsible for the delay, Kong Dep. at 102–03; 182–83, and that it was caused by Plaintiff's failure to complete two mandatory training models, *id.* at 104–05.  Kong testified that

Plaintiff completed the training by early August 2018.  *Id.* at 104.  Plaintiff alleges that the delay

lasted at least through January 2019.  ODI Intake II at 6.  Both parties agree his raise was

retroactive to July 2018, meaning Plaintiff did not lose any income because of the delay.  Pl.

Dep. at 204; Kong Dep. at 103.

Plaintiff also alleges that he was banned from the BPI office starting in 2018.  Pl. Aff.

¶¶ 27–28.  He claims that Brindisi informed him of the ban, but Feehan and Kong were also

involved in making the decision to exclude him from the office.  Pl. Dep. at 67–69, 158, 162.

Plaintiff supports this claim with the testimony of a construction inspector, Gina Mena, working

for Simco Engineering at one of Plaintiff's job sites.  Pl. Opp'n at 8, 16, 25–26.  At her

deposition, Mena testified that she heard Brindisi tell Plaintiff that he was not permitted to go to

the BPI office.  ECF No. 128-10 at 13–17.  Plaintiff also references an email he sent to K.

Emmanuel Ohene, an investigator for ODI, while Plaintiff was allegedly banned, which states

"[i]t was made clear to me I am not allowed, under any circumstances[,] in the [ConEd] office

. . . ."  ECF No. 109-13.  He further alleges that the printer in the field office did not work.  *See*

*id*.  The printer issues precluded him from completing his work at the field office so he would

"sneak" into or "just go to the [BPI] office."  Pl. Dep. at 70–72, 157.  Defendants deny that

Plaintiff was banned from the BPI Office.  Defs. Opp'n at 14; *see also* Brindisi Dep. at 101;

Feehan Dep. at 93–94, ECF No. 105-4; Kong at 66–67.

On March 15, 2019, ODI issued a report in response to Plaintiff's complaint (the "ODI

Report").  ODI Report, ECF No. 105-23.  The ODI Report found that Feehan had violated

ConEd's equal employment opportunity policy and concluded there was insufficient evidence to

find a violation by Brindisi.  *Id.* at 18.  It further found that Black employees at BPI were

disciplined more harshly and subjected to more scrutiny than their white counterparts.  *Id.* at

17–18.  The ODI Report stated that the inequitable treatment created a "hostile, intimidating environment" for Black employees.  *Id.* at 17.  As a result of the findings, Feehan was issued a 40-hour suspension, demoted, transferred to a different office, given one-on-one training, denied a merit increase and bonus for one compensation cycle, and had the violation noted in his performance evaluation.  56.1 Stmt. ¶ 56.

Around May 2019, Brindisi was leaving BPI and informed the new group supervisor that Plaintiff may turn in paperwork with intentional mistakes as a way of getting overtime.  Brindisi Dep. 108–109.  Brindisi testified that he did not believe Plaintiff was intentionally making mistakes, but he had been told by others that Plaintiff had claimed to have done so, and, therefore, Brindisi felt he should give the new supervisor notice of the allegation.  Brindisi Dep. at 62–64, 66–67, 108–09.

On May 21, 2019, Plaintiff made a charge of discrimination with the U.S. Equal Employment Opportunity Commission and requested a right to sue letter.  ECF No. 105-26.  He received the notice of right to sue on May 30, 2019, ECF No. 1-2, and filed this case on June 26, 2019, ECF No. 1.

On June 5, 2019, Plaintiff filed a second ODI complaint.  ODI Intake II at 1–2, ECF No. 109-17.  He claimed to have been subjected to retaliation by Kong because of his initial complaint.  *Id.*  This retaliation included his being "banished" from the BPI office and that a wage increase he was entitled to was intentionally delayed.  *Id.*  This complaint was not investigated because of this litigation.  56.1 Stmt. ¶ 61.

**DISCUSSION**

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party."  *Anderson*, 477 U.S. at 248.  The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the non-moving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  In doing so, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  In deciding the motion, the court views the record in the light most favorable to the non-moving party.  *Koch*, 287 F.3d at 165.

The same standard applies to cross-motions for summary judgment.  *United Indus. Corp. v. IFTE Plc.*, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003).  "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party."  *Id.*

Courts must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[]" the non-movant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks and citation omitted).  That said, summary judgment is warranted if the opposing party "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct."  *Figueroa v. N.Y. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (quotation marks and citation omitted).

II.     Hostile Work Environment

A.  Title VII, § 1981, and the NYSHRL

Plaintiff brings claims under Title VII, § 1981, and the NYSHRL alleging that Defendant subjected him to a hostile work environment because of his race.  A plaintiff can establish a *prima facie* hostile work environment claim under Title VII, § 1981, and the NYSHRL if he can show that: "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," and that such mistreatment occurs "because of [his] protected characteristic."  *Rivera v. Rochester Genesse Reg'l Transp. Auth.*, 743 F.3d 11, 20 & n.4 (2d Cir. 2014) (quotation marks, alterations, and citation omitted).  However, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an

environment that a reasonable person would find hostile or abusive—is beyond [the statutes']
purview[s]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Also, "if the victim does not
subjectively perceive the environment to be abusive, the conduct has not actually altered the
conditions of the victim's employment, and there is no . . . violation." *Id.* at 21–22. Further,
"individuals are not subject to liability under Title VII." *Sassaman v. Gamche*, 566 F.3d 307,
315 (2d Cir. 2009) (citation omitted).

Courts must also find a "basis for imputing the conduct creating the hostile work
environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013).
There can be no imputed liability unless (1) the complained-of conduct was done by a
supervisor, or (2) "the employer failed to provide a reasonable avenue for complaint or . . . knew,
or in the exercise of reasonable care should have known, about the harassment yet failed to take
appropriate remedial action." *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190
(2d Cir. 2010) (quotation marks and citation omitted). Section 1981 and the NYSHRL apply the
same standard. *See Littlejohn v. City of New York*, 795 F.3d 297, 320–321 (2d Cir. 2015)
(§ 1981); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (the
NYSHRL).

Plaintiff argues that, when the evidence is viewed in its totality, the "work environment
. . . was hostile to [B]lack employees such as [] Plaintiff." Pl. Mem. at 10. Defendants argue
that the marginal ratings and the February 2018 incident are each insufficient to give rise to a
hostile work environment claim. Defs. Mem. at 23–24; Defs. Opp'n at 28–29. The Court agrees
that, in isolation, these incidents cannot form the basis of a hostile work environment cause of
action. *See Clarke v. InterContinental Hotels Grps., PLC*, No. 12 Civ. 2671, 2013 WL 2358596,
at *10 (S.D.N.Y. May 30, 2013); *Chick v. Cnty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013).

However, when the work environment is viewed in its totality, as it must be, *Rivera*, 743 F.3d at 20, Plaintiff has raised triable issues of fact which cannot be resolved on a motion for summary judgment.

Plaintiff and Defendants agree that the workplace seating arrangement was divided, with white male employees on one side and women and Black employees on the other.  Pl. Mem. at 22; Defs. Opp'n at 28.  There are issues of fact as to when the seating configuration began and if it was *de facto* segregation rather than employees voluntarily selecting their seats.  There is also a question as to whether actions were taken by Defendants to mitigate the seating segregation or to ensure the seating was voluntary.  Additionally, the internal investigation also raises issues of fact.  Defendants contend that the ODI Report is not dispositive as it was looking for violations of internal policy rather than violations of employment law.  Defs. Mem. at 2, 10.  The Court agrees.  However, the findings suggest that a reasonable jury could determine that the environment was hostile under the relevant employment laws.  The Court holds, therefore, that neither party is entitled to summary judgment.  *Rasmey v. Marriot Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020).  However, the Individual Defendants are entitled to summary judgment under Title VII because "individuals are not subject to liability under Title VII."  *Sassaman*, 566 F.3d at 315 (citation omitted).

Next, Plaintiff must "demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer."  *Distasio v. Parkmer Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (quotation marks and citation omitted).  When an employer negligently permits the "creation or continuation of a hostile work environment," such conduct may be imputed to the employer.  *Vance v. Ball State Univ.*, 570 U.S. 421, 446 (2013).  Further, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment

created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  There are issues of material fact as to whether the conduct can be imputed to ConEd as a jury must determine if there was a hostile work environment, and, if there was, who created or permitted it to continue.

Accordingly, Defendants' motion for summary judgment on the hostile work environment claims is GRANTED for the Individual Defendants for the Title VII claim, and otherwise DENIED.  Plaintiff's motion for summary judgment on the hostile work environment claims is DENIED.

B.  NYCHRL

Unlike Title VII, § 1981, and the NYSHRL, the NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability."  *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009) (citation omitted).  Rather, "'the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees' because of a protected trait."  *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

As described above, there are triable issues of fact as to whether Defendants treated Plaintiff less well because of his race.  For example, there is an issue of fact regarding the seating arrangement and whether it was *de facto* segregation.  As to the ODI Report, a jury must weigh the facts underlying the report and make their own determination regarding possible inferior treatment based on race.

Accordingly, the parties are not entitled to summary judgment on Plaintiff's claims under the NYCHRL for hostile work environment, and the motions are DENIED.

III.   Discrimination

A.  Title VII, § 1981, and the NYSHRL

The Court shall analyze Plaintiff's claims under Title VII, § 1981, and the NYSHRL using the burden shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  *See Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir. 1984) (applying the *McDonnell-Douglas* framework to § 1981 claims); *Olsson v. ABM Taxi Dispatch LaGuardia Airport*, No. 18 Civ. 8815, 2020 WL 5038742, at *4 & n.3 (S.D.N.Y. Aug. 26, 2020) (applying the *McDonnell-Douglas* framework to NYSHRL claims for conduct occurring before August 2019).

Under the *McDonnel-Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) he is a member of a protected class; (2) he is qualified for the positions he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  Although the plaintiff's burden at this stage is minimal, "it is not . . . nonexistent."  *Wellington v. Spencer-Edwards*, No. 16 Civ. 6238, 2019 WL 2764078, at *3 (S.D.N.Y. July 1, 2019); *see also Garcia v. Henry St. Settlement*, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2007) (explaining how the Second Circuit "recognized that this burden has substance" (quotation marks omitted)).  A plaintiff must point to specific facts that make out the elements of a *prima facie* case, as "[c]onclusory and speculative allegations will not suffice."  *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016).

If the plaintiff makes a *prima facie* case, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the adverse action. *Ruiz*, 609 F.3d at 491–92. If the defendant does so, the burden returns to the plaintiff to demonstrate that the real reason for the action was the plaintiff's protected characteristic. *Id.*

For liability to flow to the employer, the "actionable discrimination" must be "caused by a supervisor." *Faragher*, 524 U.S. at 780. Here, all three of the Individual Defendants were Plaintiff's direct or indirect supervisors, *see* 56.1 Stmt. ¶¶ 9–10, Kong Dep. at 15, and, therefore, if the claims against any of the Individual Defendants proceed to trial, so will the claims against ConEd. Additionally, as with the hostile work environment claims, the Individual Defendants cannot be held liable for discrimination under Title VII. *Sassaman*, 566 F.3d at 315 (citation omitted).

The parties agree that Plaintiff is a member of a protected class, 56.1 Stmt. ¶ 1, and Defendants do not contest that he was qualified for his position, *see generally* Def. Mem. Defendants contend that Plaintiff has failed to establish a *prima facie* case of discrimination because he has not identified "an adverse employment action that gave rise to an inference of discrimination." Def. Mem. at 13.[7]

Plaintiff puts forward multiple actions which he argues were adverse employment actions, including having his overtime interfered with, being forced to take a medical leave, being denied medical treatment, being banned from the office and forced to use faulty equipment, being given an oral warning and lower evaluations, being subjected to yelling and undue scrutiny, and having his advancement stifled and his reputation diminished. Pl. Mem. at

---

[7] Defendants also argue that Plaintiff abandoned his § 1981 and NYSHRL discrimination claims. *See* Defs. Opp'n at 23–24. The Court disagrees. Plaintiff discussed the overlap between the standards for Title VII, § 1981, and NYSHRL claims, Pl. Mem. at 25–26, implicitly applying his Title VII arguments to his § 1981 and NYSHRL claims.

1, 15; Pl. Opp'n at 18, 20, ECF No. 126.  The Court will review each of the employment actions described by Plaintiff to determine if they are legally cognizable.

a.  Overtime Interference

Denial or loss of extra hours resulting in loss of actual income can constitute an adverse employment action.  *United States v. N.Y.C. Dep't Educ.*, 407 F. Supp. 3d 365, 397 (S.D.N.Y. 2018) (citations omitted).  Plaintiff alleges that Brindisi and Feehan interfered with his overtime, resulting in loss of income.  *See* Pl. Mem. at 4, 8, 12, 15.  Defendants counter that Plaintiff refused overtime, pointing to a passage in his deposition.  *See* Defs. Reply at 7.  Plaintiff states that he stopped seeking overtime, which he had sought prior to Feehan becoming his manager, and that he sometimes refused overtime.  *See* Pl. Dep. at 457–60.  But, this testimony does not undermine his allegation that Brindisi and Feehan interfered with his overtime, because not requesting overtime is distinct from not being offered overtime.  In fact, the internal investigation found that Feehan did interfere with Plaintiff's overtime and that the interference was "indicative of a pervasive pattern of behavior promulgated against [Black employees] within the group." ODI Report at 11.[8]

Defendants put forward as a legitimate nondiscriminatory reason for Plaintiff's denial of overtime that the union controlled overtime.  *See* Defs. Mem. at 5, 15.  However, the fact that Feehan was found by an internal investigation to have interfered in Plaintiff's overtime undermines this claim.  *See also* Pl. Dep. at 198 (stating blaming union was pretext).

---

[8] Plaintiff argues that the internal investigation estops Defendants from denying discrimination on the part of Feehan, and possibly Brindisi. Pl. Mem. at 18–19.  The Court disagrees.  Plaintiff cites no case for the proposition that an internal investigation has preclusive effect.  The cases relied on by Plaintiff find estoppel when the determination was made by a state administrative agency acting in a judicial capacity and was reviewed by a state court, *see, e.g.*, *Linares v. City of White Plains*, 773 F. Supp. 559, 563–64 (S.D.N.Y. 1991).

There are material disputes of fact as to whether Brindisi and Feehan interfered with Plaintiff's overtime such that he experienced a loss of income on the basis of his race, preventing the Court from determining if Plaintiff has made a *prima facie* case of discrimination. However, Plaintiff has not alleged that Kong was involved in the overtime issue, *see generally* Pl. Mem., therefore, she is entitled to summary judgment for this alleged adverse employment action.

### b.  Medical Leave

Plaintiff argues that Defendants' discriminatory acts against him forced him to take a medical leave. Pl. Dep. at 169–72. The tipping point was the February 7, 2018 incident, after which Plaintiff went to an emergency room to seek mental health care, *id.* at 170, 175–77, and was treated by a psychologist, *id.* at 180–81. However, Plaintiff does not allege that he was forced to take a medical leave. Although his medical leave may have been a result of the alleged discrimination, it is not an independent adverse employment action as there is no evidence that the medical leave was mandatory or that it was based on race, rather than his medical needs. Plaintiff has, therefore, not made out a *prima facie* case of employment discrimination related to his leave.

### c.  Denied Medical Treatment

Plaintiff argues that he was denied medical treatment and that this constitutes an adverse employment action. *See* Pl. Opp'n at 20. However, based on his own testimony, ConEd's medical center directed him to call an ambulance rather than driving to the ConEd medical center. Pl. Dep. at 174. ConEd's wellness center also provided Plaintiff with information for a facility that could see him. *Id.* at 179. Plaintiff cites no cases for the proposition that denying treatment is an adverse employment action. Further, Plaintiff does not adduce any evidence that the medical and wellness centers' directing him to receive treatment elsewhere was based on his

race.  Therefore, Plaintiff has not made out a *prima facie* case of employment discrimination based on denial of medical treatment.

### d.  Field Office and Faulty Equipment

Plaintiff alleges he was prohibited from working from the BPI office and relegated to a field office where some of the equipment did not work.  Pl. Mem. at 7.  In particular, Plaintiff testified that a printer did not connect properly.  *See* Pl. Dep. at 69–72.  Defendants contend that Plaintiff was not banned from the office.  Defs. Opp'n at 14.  "A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way."  *Patrolman's Benevolent Ass'n of N.Y.C. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002).  Plaintiff claims that he was adversely impacted because he was banned from his old office and redirected to an office where the printer did not work.  *See* Pl. Mem. at 7.  Having a faulty printer and reporting to work at a new location is more akin to a "mere inconvenience" than a material change in work conditions.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).  Therefore, even construing all the facts in the light most favorable to Plaintiff, he has failed to make out a *prima facie* case of employment discrimination with respect to claims about being denied access to his old office.

### e.  Verbal Warning

Plaintiff contends that the verbal warning he was issued after the February 7, 2018 incident constitutes an adverse employment action.  Pl. Mem. at 17.  "[O]ral and written warnings do not amount to materially adverse conduct."  *Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007); *see also Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 332 (S.D.N.Y. 2020) (collecting cases).  Therefore, Plaintiff has failed to make a *prima facie* case of

employment discrimination as a matter of law with respect to the verbal warning.

### f.  Performance Evaluations

Plaintiff states that he received less than satisfactory ratings on two of his biannual performance evaluations.  Pl. Opp'n at 19.  Defendants claim that Plaintiff "never received anything other than '[s]atisfactory' on his overall performance evaluation," Defs. Mem. at 13, but the record is clear that some of the ratings on individual components of the evaluation were below satisfactory, *see generally* Oct. 2017 Evaluation (overall "satisfactory" rating with a "marginal" rating for work quantity); Feb. 2018 Evaluation (overall "satisfactory" rating with "marginal" ratings for work quality and cooperation).  "A negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action."  *Siddiqi v. New York City Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008); *see also Culleton v. Honeywell Intl., Inc.*, 257 F Supp 3d 333, 342 (E.D.N.Y. 2017).  Plaintiff does not allege that he experienced a tangible loss because of the lower marks on the three subcomponents.  *See* Pl. Dep. at 276. Therefore, Plaintiff has not made a *prima facie* case of discrimination on the basis of his performance evaluations.

### g.  Yelling and Undue Scrutiny

Plaintiff contends that he was subjected to yelling and undue scrutiny.  Pl. Mem. at 9–10, 15.  These allegations, even viewed in the light most favorable to Plaintiff, do not constitute an adverse employment action as they were not "materially adverse with respect to the terms and conditions of [Plaintiff's] employment."  *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quotation marks and citation omitted).  Plaintiff identifies only one incident —when he was allegedly yelled at on February 7, 2018.  Pl. Mem. at 5.  Even taking the facts in

the light most favorable to Plaintiff, an isolated incident of yelling without racial undertones is not sufficient to make out a claim under discrimination laws because the laws are not "general civility code[s]." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted); *cf. Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) (yelling insufficient for a retaliation claim). As to the scrutiny allegations, Plaintiff has not alleged that the scrutiny resulted in an adverse impact, such as a reduction in pay, which is required for scrutiny to be deemed an adverse employment action. *Dawson v. City of New York*, No. 09 Civ. 5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19, 2013).

### h.  Stifled Advancement

Plaintiff claims his advancement was stifled and his reputation was damaged by the Individual Defendants' actions. Pl. Mem. at 15. As an example of such degradation, Plaintiff points to Brindisi's statements to the new group supervisor that Plaintiff may turn in paperwork with intentional mistakes as a way of getting overtime. Pl. Mem. at 9, 23. Such a negative report is not an adverse employment action unless it gives rise to "material adverse changes in work conditions." *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) (citation omitted). Plaintiff does not allege any adverse changes to his work condition because of these comments. *See generally* Pl. Mem. He also does not provide other examples of Defendants' actions that stifled his advancement, beyond those examined above. *See generally id.* Therefore, he has failed to make a *prima facie* case as to his stifled advancement allegation.

Accordingly, Defendants' motion for summary judgment is GRANTED for Plaintiff's discrimination claims, except for Plaintiff's § 1981 and NYSHRL claims for the overtime allegations against Brindisi, Feehan, and ConEd, and his Title VII claim for the overtime

allegations against ConEd, for which the motion is DENIED.  Plaintiff's motion for summary

judgment is DENIED.

> ### B.  NYCHRL

The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the

extent that such a construction is reasonably possible."  *Albunio v. City of New York*, 947 N.E.2d

135, 137 (N.Y. 2011).  To survive summary judgment,

> plaintiff need only show that [his] employer treated [him] less well, at least in part
> for discriminatory reasons.  The employer may present evidence of its legitimate,
> non-discriminatory motives to show the conduct was not caused by
> discrimination, but it is entitled to summary judgment on this basis only if the
> record establishes as a matter of law that discrimination played no role in its
> actions.

*Mihalik*, 715 F.3d at 110 n.8 (quotation marks, alteration, and emphasis omitted).  Even given

the more liberal standard, the NYCHRL is not "a general civility code, and petty slights and

trivial inconveniences are not actionable."  *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d

429, 450 (E.D.N.Y. 2013) (quotation marks and citation omitted).

The record in this case raises a triable issue of fact as to whether Plaintiff was treated less

well because of his race.  For example, the ODI Report concluded that Black employees in

Plaintiff's group, including him, were treated less well as compared to white employees.  ODI

Report at 17.  It will be up to a jury to evaluate the evidence and reach its own conclusions under

the NYCHRL standard.

Accordingly, the parties' motions for summary judgment for Plaintiff's NYCHRL

discrimination claim are DENIED.

IV.   <u>Retaliation</u>

A.  Title VII, § 1981, and the NYSHRL

To establish a *prima facie* case of retaliation under Title VII, § 1981, and the NYSHRL, a plaintiff must show that: (1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Cretella v. Liriano*, 633 F. Supp. 2d 54, 74 (S.D.N.Y. 2009), *aff'd*, 370 F. App'x 157 (2d Cir. 2010) (Title VII and § 1981 claims); *Bermudez*, 783 F. Supp. 2d at 578 (NYSHRL retaliation claims are treated the same as § 1981 claims).

If Plaintiff sustains his initial burden of establishing a *prima facie* case for retaliation, "a presumption of retaliation arises [and t]he defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quotation marks and citations omitted).  Upon such a showing by the defendant, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action."  *Id*.

The parties contest which events should be considered protected activities and when the Defendants can be considered to have been aware of each of the protected activities.  The parties also dispute if there were any adverse employment actions and if there was a legitimate, non-retaliatory reason for the actions.  The Court shall evaluate each issue in turn.

1.  Protected Activity and Notice

To establish the protected activity element of a *prima facie* retaliation case, the plaintiff "need not prove that the conditions against which he protested actually amounted to a violation of [employment law]."  *Wimmer v. Suffolk Cnty Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999);

*see also Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir. 1986).  Rather, plaintiff must demonstrate "only that he had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  *Wimmer*, 176 F.3d at 134 (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  Plaintiff identifies four different possible protected activities.

First, soon after Feehan became manager, Plaintiff states that he raised his hand at a safety meeting and said that he and others were having trouble keeping up with paperwork.  56.1 Stmt. ¶ 23; ECF No. 105-12.  Plaintiff alleges that after this he had a "target on his back," and experienced retaliation.  56.1 Stmt. ¶ 24; Pl. Dep. at 45–46, 293; ECF No. 105-12.  The Court finds that this complaint does not constitute protected activity because Plaintiff could not have had a good faith, reasonable belief that he was protesting something that violated employment law.  *See Wimmer*, 176 F.3d at 134.

Plaintiff claims that the 2017 and 2018 grievances were related to race, and, therefore, protected activities.  Pl. Opp'n at 24–25.  On its face, the 2017 grievance does not mention race, and states only that Plaintiff was subjected to a "marginal on evaluation, harassment, intimidation and retaliation."  2017 Grievance.  The same is true of the March 2018 grievance where he requested the removal of the "marginal" ratings from his last two evaluations, and "[t]o remove all false allegations regarding [his] work ethic[,] [t]o stop harassment, discrimination against [him], and stop retaliation and remove verbal."  2018 Grievance.  Based on this language, it is unclear if Plaintiff was complaining of conduct prohibited by employment laws.  However, the Court need not resolve this issue.  The use of terms such as discrimination, harassment, and retaliation are insufficient to place an employer on notice of the protected activity "if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully

discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, P.C., 716 F.3d 10, 17 (2d Cir. 2013). Here, nothing would place the employer on notice that the grievances were related to race-based treatment. Therefore, Plaintiff has not met the second prong of the *prima facie* case.

The parties agree that the initial ODI complaint was a protected activity, Pl. Opp'n at 24; Defs. Mem. at 19–20, and that the Individual Defendants became aware of the complaint in the spring of 2018, Kong Dep. at 39 (Kong testified she became aware of the complaint in April 2018); ECF No. 123-3 (Brindisi interviewed April 24, 2018, and Feehan interviewed April 26, 2018, for the OCI investigation). Therefore, the Court shall only consider adverse employment actions that occurred after the relevant Individual Defendants became aware of the ODI complaint. *See Bamba v. Fenton*, 758 F. App'x 8, 13 (2d Cir. 2018) (looking to when the individual defendant became aware of the protected activity).

Further, the Court finds that the second ODI complaint on June 5, 2019, was a protected activity as it made claims sounding in retaliation for the first ODI complaint. *See* ODI Intake II at 1–2. It is not clear from the record, however, when and if the Individual Defendants became aware of the second ODI complaint.

### 2. Adverse Employment Action

For retaliation claims, the definition of adverse employment action is broader than for employment discrimination claims. *Hicks*, 593 F.3d at 165. The "employer's action[] must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57. Further, for retaliation claims, adverse employment actions must be "considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be

actionable." *Hicks*, 593 F.3d at 165 (quotation marks omitted).  The standard is the same under NYSHRL.  *Kelly*, 716 F.3d at 14.

Plaintiff claims that he was subjected to negative evaluations, given a verbal warning, denied overtime, and was banned from the main BPI office.  Pl. Mem. at 23–24.  He also alleges that Kong delayed his raise because of his protected actions, *id.* at 24, and that Brindisi spoke ill of Plaintiff to his new supervisor, *id.* at 25.  The evaluations were completed in October 2017 and February 2018, *see generally* Oct. 2017 Evaluation; Feb. 2018 Evaluation, before Feehan and Brindisi knew about the ODI complaint, *see* Brindisi Dep. at 111; *see* Feehan Dep. at 96. The verbal warning was issued on March 28, 2018, 56.1 Stmt. ¶ 49, again, prior to Feehan and Brindisi knowing about the ODI complaint.  Therefore, Plaintiff has failed to make a *prima facie* case as to those employment actions.

a.  Overtime Denial

Denial of overtime can constitute an adverse employment action.  *N.Y.C. Dep't Educ.*, 407 F. Supp. 3d at 397.  Although Plaintiff claims that he was denied overtime in 2016 and 2017, Pl. Aff. ¶¶ 8–10, prior to the protected activity, he alleges that he was also denied overtime on April 28, 2018, Pl. Dep. at 196–97, days after Feehan became aware of the OCI investigation, ECF No. 123-3.  Plaintiff contends that when it was his turn to work overtime based on the overtime allocation system in place at the time, Feehan instead changed Plaintiff's schedule to deprive him overtime.  Pl. Dep. at 196–99.  Plaintiff does not claim that he was denied overtime by having his schedule changed before the protected activity, therefore, Plaintiff may be able to state a claim of retaliation based on this incident.  *See Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) (citation omitted); *see also Báez v. New York*, 629 F. App'x 116, 119 (2d Cir. 2015).  However, Defendants contend Plaintiff was never denied

overtime in an unfair manner, creating an issue of material fact.  *See* Defs. Opp'n at 7–8.  As to

the causal connection prong, the timing of the incident provides the causal connection required

for the *prima facie* case.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir.

2010).

Defendants offer a non-retaliatory explanation: that the union controlled overtime

allocation.  Defs. Mem. at 5; Defs. Opp'n at 5–6.  However, Plaintiff alleges that Feehan

manipulated Plaintiff's schedule to avoid giving him overtime in a way that circumvented the

union's control, *see* Pl. Dep. at 198–99, thus rebutting the non-retaliatory reason.

Brindisi and Kong are not implicated in the April 28, 2018 denial of overtime.  Therefore,

they are entitled to summary judgment on the retaliation claims arising from the April 28, 2018

incident, when viewed in isolation.  However, there are material issues of fact as to the April 28,

2018 overtime denial which preclude summary judgment for the other parties.

### b.  Ban from Office

Plaintiff alleges that Brindisi prohibited Plaintiff from working at the BPI office and

relegated him to a field office.  Pl. Opp'n at 21.  Brindisi allegedly said that the order came from

Feehan and Kong.  Pl. Dep. at 157–59.  Plaintiff claims that he was permitted to return when

Feehan was disciplined and transferred to a different borough.  *Id.* at 161–62.  Plaintiff further

alleges that the printer in the field office did not work.  *See id.*  Defendants deny that Plaintiff

was ever banned from the BPI Office.  Defs. Opp'n at 14.

A transfer to another office may be considered an adverse action if it negatively impacted

the employee such that the transfer would dissuade a reasonable person from engaging in

protected activity.  *Taylor v. City of New York*, 207 F. Supp. 3d 293, 308 (S.D.N.Y. 2016).  Here,

the printer was allegedly not functioning, which impacted Plaintiff's ability to complete his

work.  *See* Pl. Dep. at 69–72.  Plaintiff testified that he was forced to access the printers in the

BPI office by "sneak[ing]" in or "just go[ing] to the office," and risking being reprimanded.  *Id.*

at 69–72, 157.  This, if true, could dissuade a reasonable person from making a complaint of

discrimination.  There is a material issue of fact as to whether Plaintiff was banned from the BPI

office.

c.   Delay in Raise

Plaintiff argues that Kong delayed his raise in retaliation for his protected activity.  Pl.

Mem. at 24.  The alleged delay occurred in July 2018.  ODI Intake II at 1–2 (ODI intake dated

June 5, 2019, alleging delay in raise).  Kong testified that human resources was responsible for

the delay, Kong Dep. at 102–03; 182–83, and that it was caused by Plaintiff not having

completed two mandatory training modules, *id.* at 104–05.  Kong stated that Plaintiff completed

the training by early August 2018.  *Id.* at 104.  Plaintiff alleges that the delay lasted at least

through January 2019.  ODI Intake II at 6.  Both parties agree his raise was retroactive to July

2018, meaning Plaintiff did not lose any income because of the delay, Pl. Dep. at 204; Kong

Dep. at 103.

A jury could reasonably conclude that a multi-month delay in receiving a wage increase

"could well dissuade a reasonable worker from making or supporting a charge of

discrimination."  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57; *see also Miller v. N.Y.*

*City Health & Hosp. Corp.*, No. 00 Civ. 140, 2005 WL 2022016, at *6 (S.D.N.Y. Aug. 22,

2005).  However, a jury could also conclude that because the increase was retroactive, it was a

"mere inconvenience."  *Sealy v. State Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 615 (2d

Cir. 2020) (citation omitted).

A reasonable jury could decide for either party on the issue of causal connection.  The delay did occur shortly after the second ODI complaint was made and while the first ODI complaint was being actively investigated and Plaintiff was providing information to the investigators, *see, e.g.*, ECF No 123-1; *see also Gorzynski*, 596 F.3d at 110.  Further, Plaintiff testified that other employees in other departments received the increase in a more timely fashion, Pl. Dep. at 203–205; 222–23.  *See Gorzynski*, 596 F.3d at 110.  However, there is also evidence in the record that the delay was caused by Plaintiff's failure to complete the required trainings.  *See* Kong Dep. at 104.

Defendants point to the fact that Plaintiff did not complete the trainings by the deadline as a legitimate, non-retaliatory reason for the delay.  Defs. Reply at 12.  Kong testified that the delay was due to a human resources requirement over which she had no control.  Kong Dep. at 102–03; 182–83.  However, the training delay does not explain why Plaintiff's raise was allegedly delayed for many more months, raising a possible rebuttal argument to the reason offered by Defendants.  These are issues a jury must resolve.  *See Kwan*, 737 F.3d at 846.

Brindisi and Feehan are not implicated in the raise delay, therefore, they are entitled to summary judgment on the retaliation claims related to the raise delay, when viewed in isolation.

### d.   Statements to New Supervisor

Plaintiff claims that Brindisi retaliated against him by warning the new supervisor that Plaintiff may turn in paperwork with intentional mistakes, even though Brindisi did not believe Plaintiff did so.  Pl. Mem. at 9, 23, 25.  A jury could determine that telling an incoming supervisor an unsubstantiated rumor about an employee "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57.  However, a jury could also determine that such "an isolated bit of

criticism, unaccompanied by any remedial action by his [new] supervisor" was not sufficient to create an adverse employment action. *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 236 (E.D.N.Y. 2016) (quoting *Levy v. Alfano*, 47 F. Supp. 2d 488, 499 (S.D.N.Y. 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000)).

The fact that the statement occurred around May 2019, Brindisi Dep. at 108–09, shortly after the ODI Report was issued on March 15, 2019, ODI Report at 1, could justify a jury's finding a causal connection sufficient to satisfy Plaintiff's *prima facie* case, *see Gorzynski*, 596 F.3d at 110. A jury could also determine that the time lag between the initial ODI complaint in February 2018, ODI Intake I at 1, and Brindisi's statement was too long to establish a causal connection, *see Gorzynski*, 596 F.3d at 110.

Defendants do not put forward a legitimate, non-retaliatory reason for the statement to the new supervisor in their briefs, *see generally* Defs. Mem.; Defs. Opp'n; Defs. Reply, but Brindisi testified that he relayed the rumor to bring Plaintiff's "new supervisor up to speed." Brindisi Dep. at 62. Plaintiff contends that Brindisi made the statement to "ruin [] Plaintiff's career." Pl. Mem. at 9. Therefore, there is a dispute as to the reason the statement was made. A jury could find that passing along such rumors to a new supervisor is part of a management transition, rather than retaliation, or the jury could find that such a rationale is pretextual.

Because there are material issues of fact, summary judgment for either party is inappropriate. However, Plaintiff has not adduced any evidence that Feehan and Kong were involved in this incident and they are, therefore, entitled to summary judgment on Plaintiff's retaliation claim based solely on the statement Brindisi made to the new manager.

e. Actions in the Aggregate

Having considered the totality of the alleged adverse employment actions, the Court finds

that there are sufficient issues of fact which preclude summary judgment for both parties.

Further, as with the hostile work environment and discrimination claims, for liability to

flow to the employer, the "actionable discrimination" must be "caused by a supervisor."

*Faragher*, 524 U.S. at 780. Here, all three of the Individual Defendants were Plaintiff's direct or

indirect supervisors, *see* 56.1 Stmt. ¶¶ 9–10, Kong Dep. at 15, and, therefore, because claims

against the Individual Defendants will proceed to trial, so will the claims against ConEd.

Finally, the Individual Defendants are entitled to summary judgment under Title VII because

"individuals are not subject to liability under Title VII." *Sassaman*, 566 F.3d at 315 (citation

omitted).

Defendants' motion for summary judgment is GRANTED to Brindisi and Kong for the

April 28, 2018, overtime allegation, to Brindisi and Feehan for the delayed raise allegation, and

to Feehan and Kong for the statement to the new supervisor, when considered in isolation, and to

the Individual Defendants for the Title VII claim, and otherwise DENIED. Plaintiff's motion for

summary judgment is DENIED.

B. NYCHRL

The NYCHRL, "rather than requiring a plaintiff to show an adverse employment action,

. . . only requires [him] to show that something happened that was reasonably likely to deter a

person from engaging in protected activity." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752,

2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (alterations in original) (quoting *Malena v.*

*Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)). "Otherwise, a *prima*

*facie* case of retaliation faces the same requirements under the NYCHRL as under the

NYSHRL." *Malena*, 886 F. Supp. 2d at 362.  Therefore, the Plaintiff must establish a causal connection between the protected activity and the thing that occurred.  *See id.*

Defendants have failed to show that they are entitled to summary judgment on Plaintiff's retaliation claims under Title VII, § 1981, and NYSHRL, they are *a fortiori* not entitled to summary judgment under the more expansive NYCHRL.  *Kwan*, 737 F.3d at 843 n.3.  Plaintiff has failed to demonstrate he is entitled to summary judgment because there are material disputes of fact as to the causal relationship between the allegedly retaliatory actions and the protected activity.

Accordingly, the parties' motions for summary judgment are DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's

- hostile work environment claims is GRANTED for the Individual Defendants for the Title VII claim, and otherwise DENIED;

- discrimination claims is GRANTED, except for Plaintiff's § 1981 and NYSHRL claims for the overtime allegations against Brindisi, Feehan, and ConEd, his Title VII claim for the overtime allegations against ConEd, and all of his NYCHRL claim, for which the motion is DENIED; and

- retaliation claims is GRANTED to Brindisi and Kong for the April 28, 2018 overtime allegation, to Brindisi and Feehan for the delayed raise allegation, and to Feehan and Kong for the statement to the new supervisor, when considered in isolation, and to the Individual Defendants for the Title VII claim, and otherwise DENIED.

Plaintiff's motion for summary judgment is DENIED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 102, 106–08.

SO ORDERED.

Dated: March 31, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge