UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WELBY ACCELY,                                       :

                  Plaintiff,                    :

            - v -                               :

CONSOLIDATED EDISON COMPANY                          :         MEMORANDUM DECISION
OF NEW YORK, INC., in its official
capacity, ANDY FEEHAN, in his official               :            19 Civ. 5984 (DC)
and individual capacity, DARREN
BRINDISI, in his official and individual             :
capacity, and THERESA KONG, in her
official and individual capacity,                    :

                  Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        N. KEITH WHITE, Esq.
                    Keith White, PLLC
                    198A Rogers Avenue
                    Brooklyn, NY 11225
                         Attorney for Plaintiff

                    JEANINE CONLEY DAVES, Esq.
                    A. Michael Weber, Esq.
                    James F. Horton, Esq.
                    Adriana H. Foreman, Esq.
                    Littler Mendelson, P.C.
                    900 Third Avenue, 8th Floor
                    New York, NY 10022
                         -- and --
                    LYNELLE SLIVINSKI, Esq.
                    Con Edison Law Department
                    4 Irving Place, 18-200
                    New York, NY 10003

> Attorneys for Defendants Consolidated Edison Co. of
> New York, Darren Brindisi, and Theresa Kong
>
> ROD BIERMANN, Esq.
> Stewart Epstein, Esq.
> Offit Kurman, P.A.
> 590 Madison Avenue, 6th Floor
> New York, NY 10022
> Attorneys for Defendant Andy Feehan

CHIN, Circuit Judge:

Before the Court are Defendants' *in limine* motions to exclude from evidence (1) the report of an internal corporate investigation by Defendant Consolidated Edison Co. of New York, Inc. ("Con Ed") into alleged violations of its Equal Employment Opportunity Policy (the "EEO Policy"), (2) a letter reporting the outcome of the investigation to Plaintiff Welby Accely, and (3) handwritten notes and other ancillary materials concerning the investigation.  Dkt. 157, 158 at 8; Dkt. 159, 160 at 4.  At oral argument of these and other *in limine* motions on April 11, 2023, the Court ruled from the bench on some of these motions.  This opinion explains the Court's rulings in greater detail.  For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

## I.  Background

This case arises out of allegations that Con Ed and three of its managerial employees, Defendants Andy Feehan, Darren Brindisi, and Theresa Kong (collectively, the "Individual Defendants," and with Con Ed, collectively "Defendants"), discriminated

against Accely in violation of federal, state, and city law.  Dkt. 1 at 1.  Accely, a Con Ed

employee since approximately 1999, alleges that beginning in fall 2017, he was

subjected, on account of his race, to a hostile work environment and adverse

employment actions, including a reduction in his overtime pay and changes in his

working conditions.  *Id*. at 2-6.  Accely also alleges that Defendants unlawfully

retaliated against him because he engaged in activities protected under federal, state,

and city antidiscrimination statutes.  *Id.* at 7-8.

Like an increasing number of public and private employers, Con Ed

maintains an office charged with developing and enforcing its policies with regard to

diversity and equal opportunity.[1]  Approximately a year before initiating this lawsuit,

Accely complained to Con Ed's Office of Diversity and Inclusion (the "ODI"), alleging

violations of the EEO Policy pertaining to his race.  Dkt. 107 at 9; *see also* Dkt. 162-5 at 3-

6.  Specifically, Accely alleged that he was "being discriminated against and harassed by

his section manager [Feehan] and supervisor [Brindisi]" and that Black employees

within his section "are often treated unfairly . . . and White employees are given

preferential treatment with respect to completion of work assignments, overtime,

---

[1]      *See, e.g.*, Exec. Order 14035, *Diversity, Equity, Inclusion, and Accessibility in the Federal Workforce*, 86 Fed. Reg. 34,593 (June 25, 2021); Dale Buss, *12 Ways Companies Are Boosting Their DEI*, Society of Human Resource Management (Mar. 9, 2022), *available at* https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/12-ways-companies-are-boosting-their-dei.aspx; Christopher Lage, *Conducting an Ethically Sound Internal EEO Investigation*, 27 ABA J. Lab. & Emp. L. 415 (2012).

performance evaluation[,] and discipline."  Dkt. 162-5 at 2.  On June 5, 2019, Accely filed a second complaint with the ODI, alleging retaliation.  *See* Dkt. 16-10 at 2-3.

Following its usual practice, the ODI assigned one of its investigators, K. Emmanuel Ohene, to look into Accely's allegations.  Dkt. 166-13 at 8 (Rodriguez Dep.). Ohene interviewed more than twenty Con Ed employees, including Accely and all three of the Individual Defendants.  Dkt. 162-5 at 21.  On March 15, 2019, Ohene submitted to Nicole Leon, the director of the ODI, a twenty-page report (the "ODI Report") summarizing the results of his investigation and concluding that Feehan had violated the EEO Policy.  *Id.* at 2, 19-20.[2]  Ohene found that there was "insufficient evidence to support a finding that [Brindisi] violated the EEO policy" but nevertheless recommended that Brindisi should "be mindful of his individual accountability and made aware that he will be held accountable for any future infractions of this nature." *Id.* at 19.  On March 29, 2019, Ohene met with Accely about the results of the investigation; that same day, Ohene sent Accely a letter (the "ODI Letter") stating that the investigation "resulted in a finding of an Equal Employment Opportunity (EEO)

---

[2]     Because the ODI Report went through several drafts, there was confusion during discovery as to which document was the one that ODI leadership adopted and that served as the basis for disciplinary action against Feehan.  *See, e.g.,* Dkt. 166-14 at 53-112, Dkt. 166-15 at 169-74 (Ohene Dep.), 166-13 at 4-6 (Rodriguez Dep.).  Counsel and Ohene eventually concurred that the version of the ODI Report bearing the Bates stamp range beginning WA_CE_000556 is "the last report that was drafted."  Dkt. 166-14 at 67, 71.  Accordingly, the Court's discussion focuses on this version of the document, which is attached to Feehan's *in limine* motion as Dkt. 162-5.  To the extent any party wishes to introduce any other version of the ODI Report, the Court reserves judgment.  *See infra* section IV.

Policy Violation" and that "appropriate corrective action will be taken to address the situation." Dkt. 162-7. Con Ed subsequently disciplined Feehan for violating the EEO Policy. Feehan was, *inter alia*, demoted, temporarily suspended, denied a merit raise, and required to undergo training. *See* Dkt. 169 at 5-6; Dkt. 130 at 203-5 (Leon Dep.). Feehan is challenging the disciplinary actions Con Ed took against him in a separate action in state court. *See Feehan v. Consolidated Edison Co. of N.Y., Inc.*, No. 154755/2022 (N.Y. Sup. Ct., N.Y. Cnty., June 3, 2019).

Con Ed, Brindisi, and move to preclude seven witnesses and thirty-six exhibits related to Ohene's investigation, including the ODI Report and the ODI Letter. Dkt. 157. Although they concede that the facts that Accely made a complaint and an investigation was conducted are admissible, they object to the admission of the ODI Report, the ODI Letter, and ancillary documents because, they argue, these materials (1) impermissibly tell the jury what result to reach; (2) risk confusing the jury because the investigation concerned alleged violations of Con Ed Policy, rather than of the law; (3) consist of inadmissible hearsay; and (4) will create "multiple mini-trials within this trial." Dkt. 158 at 8-10. Feehan, who is represented by separate counsel, also moves, for similar reasons, to preclude the ODI Report, the ODI Letter, and ancillary documents. Dkt. 159; Dkt. 160 at 4. Accely opposes the motions to preclude this evidence, arguing principally that the materials are covered by hearsay exclusions and exceptions. *See*

Dkt. 170 at 12-16; Dkt. 171 at 10-18.  The Court discusses each category of evidence in turn.

## II.    *The ODI Report*

Subject to the applicable Federal Rules of Evidence, courts have routinely admitted the reports of human resources investigations conducted in both the private and public sectors.  *See, e.g., Carolina v. JPMorgan Chase Bank, N.A.*, No. Civ. 19-5882, 2021 WL 5396066, at *4-*9 (D. Ariz. Nov. 17, 2021); *Jacobs v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5058, 2018 WL 10125148, at *12 (E.D.N.Y. Mar, 31, 2018); *Ramsaran v. Booz & Co. (N.A.), Inc.*, No. 14 Civ. 708, 2015 WL 5008744, at *7-*9 (S.D.N.Y. Aug. 24, 2015); *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388, 2012 WL 5451189, at *3 n.4 (S.D.N.Y. Nov. 8, 2012), *aff'd on other grounds*, 542 F. App'x 12 (2d Cir. Oct. 11, 2013); *Castellucio v. Int'l Bus. Machines Corp.*, No. 9 Civ. 1145, 2013 WL 6842895, at *2 (D.N.J. Dec. 23, 2013); *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1128 (D. Ore. 2013); *O'Brien v. Int'l Bus. Machines, Inc.*, No. 6 Civ. 4864, 2009 WL 806541, at *8 n.17 (D.N.J. Mar. 27, 2009); *Brauninger v. Motes*, 260 F. App'x 634, 636-38 (5th Cir. 2007).  Broadly speaking, these courts have asked, first, whether a report (and any out-of-court statements it may contain) satisfies one or more exclusions or exceptions to the rule against hearsay and, second, whether the circumstances of the report's preparation establish its trustworthiness.  *See, e.g., Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64-65 (2d Cir. 1998).

Here, the ODI Report is plainly relevant to Accely's claims of unlawful discrimination on the basis of race. *See* Fed. R. Evid. 401. The report contains information about Con Ed's investigation of Accely's specific complaints as well as about the overall treatment of its Black employees. For instance, the report concludes, in part, that "Black/African American employees within the Bronx Public Improvement -- Construction Department[] have been disciplined for infractions that the White employees have not been." Dkt. 162-5 at 18. The report also observes that "the alleged preferential treatment afforded to the White employees within the group was prevalent enough to negatively impact the morale[] and overall performance of the Black/African American Employees." *Id*. The report's findings will surely be relevant to the jury's assessment of Accely's claims.

Moreover, the circumstances of the ODI Report's preparation suggest it is reliable. First, Ohene carried out a thorough investigation into Accely's allegations. Ohene interviewed nearly twenty employees, meeting with each "Respondent" (Feehan and Brindisi) more than once. *See* Dkt. 162-5 at 7 & n.11. Ohene contemporaneously documented his interviews in written and typed notes. He produced several drafts of his report, which he revised under the guidance of senior ODI staff. Next, the final ODI Report is a judicious document. It considers each of Accely's allegations in turn and is careful to distinguish among the different kinds of behavior about which Accely complained. *See id*. at 3-6, 7-18. The report also assesses Feehan's and Brindisi's

conduct individually, finding that whereas Feehan violated the EEO Policy, there was

insufficient evidence to reach the same conclusion as to Brindisi. *See id.* at 18-20. The

ODI Report nevertheless recommends steps Brindisi and Con Ed should take to

minimize the risk of a future violation. Finally, the ODI Report's trustworthiness is

bolstered by the fact that its findings are in some respects adverse to Con Ed's interests.

Although the report was not prepared in anticipation of litigation, the outcome of

Ohene's investigation increased the risk that Con Ed would be found liable for any

litigation that might arise from Accely's complaints. For this reason, it is especially

unlikely that Con Ed would have intentionally or knowingly commissioned, accepted,

or acted upon a report containing falsehoods. *See, e.g., La Day v. Catalyst Tech, Inc.,* 302

F.3d 474, 481 n.7 (5th Cir. 2002).

Defendants, however, contend that the report "impermissibly tells the jury

what result to reach." Dkt. 158 at 8 (quoting *Chalco v. Belair,* No. 15 Civ. 340, 2019 WL

456162, at *4 (D. Conn. Feb. 5, 2019)); *see also* Dkt. 160 at 25-26. This argument ignores

the crucial fact that the ODI Report is not dispositive and that the jury will decide,

based on all the evidence presented, whether to accept the report's findings and

whether to conclude that Defendants violated the law.[3] Therefore, admitting the ODI

---

[3]      Moreover, a violation of Con Ed's EEO Policy does not necessarily constitute a violation of federal, state, or city law. See Dkt. 166-15 at 199-200 (Ohene testifying that the EEO Policy is not co-extensive with the law); 166-13 at 65 (Rodriguez testifying same), 73 (Rodriguez testifying he "cannot conclude" whether Feehan violated federal law on the basis of the ODI Report's findings). As Con Ed, Brindisi, and Kong concede, Dkt. 158 at 9, Judge Torres reached

8

Report will not confuse or mislead the jury. *See Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977). The Court will give a limiting instruction when the ODI Report is first admitted, followed by a corresponding instruction in the jury charge. *See* Fed. R. Evid. 403, 105.; *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) ("[L]imiting instructions are often sufficient to cure any risk of prejudice").

The cases on which defendants rely are also unavailing. *See* Dkt. 160 at 25-27. For instance, in *Paolitto*, the Second Circuit made clear that a district court "is in the best position" to consider whether a report possesses indicia of trustworthiness, as well as to assess "the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate" into a rehashing of the previous investigation. *Paolitto*, 151 F.3d at 64-65. In that case, the Circuit held that the district court did not abuse its discretion in excluding a state agency report because the report's findings were undercut by other evidence and it would largely duplicate trial testimony. *Id.* In *Casmento v. Volmar Constr., Inc.*, No. 20 Civ. 0944, 2022 WL 1094529, at *2 (S.D.N.Y. Apr. 12, 2022), the court excluded letters conveying the results of government regulatory investigations not because documents of this type are generally inadmissible, but because the particular letters at issue consisted merely of "conclusory findings that fail to describe the nature of the [agency's] investigation or the basis for its conclusions."

_____

the same conclusion in her summary judgment decision. "[T]he ODI Report is not dispositive as [the report] was looking for violations of internal policy rather than violations of employment law." Dkt. 138 at 11; *see also id.* at 15 n.8.

The Court concludes, therefore, that the ODI Report is relevant evidence admissible under Rules 401 and 403.[4]  Because the ODI Report is an out-of-court assertion, however, to the extent that Accely wishes to offer it for its truth, he must show that it satisfies one or more of the exceptions or exclusions to the rule against hearsay.  *See* Fed. R. Evid. 801(c).  And to the extent that Accely wishes to offer any of the statements contained in the report contains truth, he must also show that each of those statements also "conforms with an exception to the [hearsay] rule."  Fed. R. Evid. 805.[5]  The Court therefore analyzes different aspects of the ODI Report to determine if they are admissible, as to each defendant, under a hearsay exception or exclusion.  Where evidence is admissible against some defendants but not others, limiting instructions may be necessary, but there is a presumption juries will follow limiting instructions given under Fed. R. Evid. 105.  *See, e.g.*, *United States v. Ebner*, 782 F.2d 1120, 1126 (2d Cir. 1986).

---

[4]      Contrary to Feehan's suggestion, *see* Dkt. 160 at 14, 22, the Court also finds that the contents of the ODI Report may be authenticated through the testimony of Ohene, Leon, Rodriguez, and other relevant witnesses, who are available to testify to the sources on which the report draws and the process by which it was assembled.  *See* Fed. R. Evid. 901.

[5]      In his reply to the Con Edison Defendants' motion, Accely notes that courts have sometimes admitted documents such as the ODI Report "as non-hearsay when offered for other purposes such as establishing why Defendant took a certain disciplinary action against an employee."  Dkt. 170 at 12-13.  Indeed, one court has admitted a Con Ed audit report both on this nonhearsay basis and for its truth, under the business records exception.  *See Barney v. Consolidated Edison Co. of N.Y.*, No. 99 Civ. 823, 2009 WL 6551494, at *14 (E.D.N.Y. Oct. 1, 2009); *see also Vahos v. General Motors Corp.*, No. 6 Civ. 6783, 2008 WL 2436943, at *4 (E.D.N.Y. June 16, 2008).  The gravamen of Accely's response to Defendants' *in limine* motions, however, is that the report should be admitted for its truth.

### A.    As to Con Ed

The entirety of the ODI Report is admissible against Con Ed under the hearsay exclusion for party-opponent statements.  When he conducted his interviews, wrote his report, and submitted it for review and approval by the ODI, Ohene was Con Ed's agent or employee, and the assertions in the report all fall within the scope of Ohene's agency or employment relationship with the company.[6]  One of the exclusions to the hearsay rule renders potentially admissible "statement[s] offered against an opposing party" that were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  Moreover, that same exclusion renders potentially admissible the statements of other Con Ed agents and employees that are summarized or quoted in the ODI Report.  None of the Defendants argues that answering questions posed by ODI investigators was not within the scope of these agents' or employees' relationship with Con Ed.

---

[6]    The parties dispute Ohene's status in relation to Con Ed.  Feehan characterizes Ohene as "a contractor with Lehigh Technical, a staffing agency."  Dkt. 160 at 4.  Accely responds that Ohene, who has served Con Ed as an ODI investigator since approximately 2016, is "a full-time employee of Con Edison contracted through Lehigh Staffing, a staffing agency, and is bound by Con Edison's Employee Policies and Procedures."  Dkt. 169 at 4-5 & n.1; *see also* Dkt. 166-14 at 26-30 (Ohene Dep.).  The Court need not resolve this disagreement, however, because the hearsay exclusion for party-opponent statements covers both agents and employees, and there is no doubt that Ohene was Con Ed's agent even if he was not also its employee.  *See* Fed. R. Evid. 801(d)(2)(D).

**B.**   *As to the Individual Defendants*

To the extent that statements by each Individual Defendant are summarized or quoted in the report, those statements are admissible against that particular defendant under the exclusion for party-opponent statements because they were "made by the party in an individual . . . capacity." Fed. R. Evid. 801(d)(2)(A). Unlike with Con Ed, however, the exclusion for party-opponent statements does not permit the entire ODI Report to be admitted against the Individual Defendants.

Nevertheless, the portions of the report that do not constitute hearsay within hearsay are admissible against the Individual Defendants as a business record (or, more precisely, a "record[] of a regularly conducted activity"). Fed. R. Evid. 803(6). The hearsay exception for such records permits their admission if "(A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*

As noted above, the reports of human resources investigations have routinely been admitted as business records. Indeed, the Second Circuit has

emphasized that "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (citation and internal quotation marks omitted).

Here, each prong of the business records exception is satisfied as to the ODI Report. First, the report's preparation was roughly contemporaneous with Ohene's investigation. Feehan attempts to avoid this conclusion by citing *Abascal v. Fleckenstein*, in which the Second Circuit held that a report concerning conditions in a New York state prison failed the first prong of the business records exception because the interval between March 2005, when investigators visited the prison, and September 2005, when they issued their report, "is too long a time to be considered a contemporaneous recording." 820 F.3d 561, 565 (2d Cir. 2016). In *Abascal*, the investigators visited the prison only once, and what inmates told the investigators during that visit may have pertained to events that transpired long before. *Id.* The Circuit stressed both these factors in concluding that the report and visit were not sufficiently contemporaneous. *Id.* Here, in contrast, Ohene testified that he carried out his investigation on an ongoing basis; indeed, he began writing his report "while he was still investigating." Dkt. 166-15 at 171 (Ohene Dep.). In consultation with his ODI colleagues, Ohene prepared numerous drafts of what became the ODI Report. *See, e.g., id.* at 170-73, 178-82. Also in contrast to *Abascal*, many of the incidents about which Ohene interviewed Con Ed employees happened in the relatively recent past, while other incidents concerned

13

patterns of discriminatory activity that were allegedly still ongoing when Ohene

conducted his interviews.

Second, the unchallenged testimony of multiple witnesses is that it was

Con Ed's usual practice to commission investigations in response to allegations that the

EEO Policy had been violated and that Ohene himself routinely carried out such

investigations.  *See* Dkt. 166-14 at 30-35 (Ohene Dep.); Dkt. 166-13 at 7 (Rodriguez Dep.);

Dkt. 130-4 at 36 (Leon Dep.).

Third, the testimony is that it was Con Ed's regular practice to make

records of ODI investigations.  Although some investigations resulted in briefer

"memo[s] to file" rather than "investigatory report[s]" like the ODI Report, it was Con

Ed's practice to document in writing both the interviews that comprised an

investigation and the investigation's findings.  Dkt. 166-14 at 33, 37-43 (Ohene Dep.).

Ohene testified that it was Con Ed's "expectation" that he "conduct a thorough

investigation" and "include all relevant information" in his report.  *Id.* at 42-43.  Robert

Rodriguez, an ODI section manager, testified that over the course of only two and a half

years with Con Ed, he personally drafted or edited some 190 investigation reports.  Dkt.

166-13 at 4, 7; *see also* Dkt. 130-4 at 17-18 (Leon Dep.).

Fourth, Accely has identified at least three witnesses -- Ohene, Leon, and

Rodriguez -- who are qualified to testify to Con Ed's practices regarding ODI

investigations, as well as about the preparation of the ODI Report.  *See* Dkt. 169 at 2-3.

Finally, none of the Defendants has shown that the ODI Report's sources or the circumstances of its preparation lack trustworthiness. The reports were not, for instance, prepared principally in anticipation of litigation. *See Palmer v. Hoffman*, 318 U.S. 109, 114 (1943); *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) ("The purpose of [Fed. R. Evid. 803(6)] is to ensure that documents were not created . . . in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question.") (citation and internal quotation marks omitted). Defendants are, of course, free to cross-examine Ohene and other witnesses involved in the report's preparation and adoption about its alleged errors, omissions, or biases.

For all these reasons, the portions of the ODI Report that do not contain hearsay within hearsay are admissible against the Individual Defendants under the business records exception. Furthermore, as stated above, the portions of the ODI Report containing statements attributed to each Individual Defendant are admissible against that defendant under the exclusion for party-opponent statements. There remains, however, the issue of double hearsay.

C.      *A Single, Redacted Version of the ODI Report Will Be Admitted*

Because much of the ODI Report consists of hearsay within hearsay, different portions of the report are admissible against each of the Individual Defendants (i.e., each Individual Defendant's own statements), whereas the report in its entirety is admissible against Con Ed. This is a logistically awkward outcome. There would be a

significant risk of confusion were the jury asked to consider different inculpatory statements contained in the same report against different Defendants. It would be all the more confusing were four different versions of the ODI Report admitted, each containing evidence admissible against each of the Defendants. Limiting instructions would be required as to each version.

For these reasons, as well as to avoid the presentation of needlessly cumulative evidence because many of the witnesses in Ohene's investigation will be testifying at trial, the Court will admit into evidence a single version of the ODI Report, with all double-hearsay statements redacted. This redacted version, which the Court directs the parties to develop jointly, may include text related to the nature of Accely's complaints to the ODI, the steps Ohene took in carrying out his investigation, the data he reviewed and analyzed, and the conclusions he reached.

III. *The ODI Letter*

The ODI Letter is much shorter than the ODI Report. It advises Accely that Ohene and his ODI colleagues completed their investigation, they found a violation of the EEO Policy had occurred, and "appropriate corrective action will be taken." Dkt. 162-7. The ODI Letter does not contain hearsay within hearsay.

The ODI Letter, although an out-of-court statement offered for its truth, is admissible against Con Ed under the hearsay exclusion for statements of party-opponents. It is a statement by an agent or employee of Con Ed, Ohene, on a matter

16

within the scope of his employment with the company and during the time that

employment relationship existed.  *See* Fed. R. Evid. 801(d)(2)(D).

The ODI Letter is also admissible against the Individual Defendants

because, like the bulk of the ODI Report, it falls within the business records exception to

the hearsay rule.  *See* Fed. R. Evid. 803(6).  The ODI Letter states that it was sent on the

same day ("today[,] Friday, March 29, 2019") that Ohene met with Accely about the

investigation, so there is no question as to its contemporaneity.  Dkt. 162-7.  As

established above, carrying out investigations in response to complaints alleging

violations of the EEO Policy was a regularly conducted activity of the ODI.  The parties

do not dispute that sending correspondence such as the ODI Letter upon the conclusion

of an investigation was part of this activity.  As the letter's author, Ohene can testify to

the circumstances of its preparation, and none of the defendants has offered a colorable

argument that the letter lacks trustworthiness.  Feehan contends that Ohene's

statements in the ODI Letter improperly purport to represent Ohene as a "spokesperson

for Con Ed" and that remarks in the letter "call into question Ohene's true independence

and impartiality in conducting the investigation."  Dkt. 160 at 33.  The Court finds these

arguments difficult to credit, but even if Feehan is correct, he has not cast doubt on the

trustworthiness of the circumstances surrounding the ODI Letter's preparation.  Feehan

is not, however, precluded from cross-examining Ohene as to potential bias.

IV.    *Ohene's Notes and Other Ancillary Materials*

Defendants also move to exclude dozens of other documents related to Ohene's investigation and the ODI Report.  *See* Dkt. 156 at 25-31; Dkt. 158 at 8-10; Dkt. 160 at 27-32.  These materials include, *inter alia*, correspondence between Accely and ODI staff, ODI office forms, correspondence among ODI and human resources staff, notes Ohene took during his interviews, emails between Ohene and employees he interviewed, and preliminary drafts of the ODI Report.  These ancillary documents are too voluminous to analyze individually as to each defendant, and the Court is inclined to preclude Accely from offering them as evidence on the basis that, in light of the admission of the ODI Report and the ODI Letter, the materials are cumulative and likely to prolong trial unnecessarily.  *See* Fed. R. Evid. 403.

Accely may, however, offer particular documents, and Defendants may offer documents for impeachment purposes.  The Court reserves judgments on such offers until trial.  *See Turner v. Univ. of Washington*, No. C05-1575, 2007 WL 2984685, *2 (W.D. Wash. Oct. 10, 2007).[7]

* * *

---

[7]    At oral argument on April 11, 2023, the Court granted the portion of the Con Edison Defendants' motion *in limine* seeking to preclude the testimony of George Nagy, a Con Ed ethics and compliance officer.  *See* Dkt. 158 at 8.  That ruling is incorporated here by reference.

In sum, the motion by Con Ed, Brindisi, and Kong to preclude evidence concerning the ODI Report is GRANTED IN PART and DENIED IN PART.  The motion is denied inasmuch as a redacted version of the ODI Report, as well as the ODI Letter in its entirety, may be admitted against Con Ed, Brindisi, and Kong.  The motion is granted inasmuch as the ODI Report must be redacted to remove all assertions constituting hearsay within hearsay.  Feehan's motion to preclude evidence concerning the ODI Report is likewise GRANTED IN PART and DENIED IN PART.  The Court reserves judgment as to the admission of the remaining underlying evidence related to the ODI Report.[8]

For the reasons described above, the Court finds that both a limiting instruction and redactions are proper as to the ODI Report.  The parties shall meet and confer with the objective of reaching consensus on a limiting instruction and a single, redacted version of the ODI Report to be admitted into evidence.  No later than April 28, 2023, the parties shall jointly provide the Court with a proposed limiting instruction and proposed redactions.

---

[8]     The Court acknowledges receipt of Feehan's letter of April 12, 2023, withdrawing his motion *in limine* as to various notes and documents Ohene created and used during his investigation and requesting that these materials "be admitted into evidence in their entirety." Dkt. 180.

Should the parties be unable to reach agreement, each party shall submit, no later than April 28, 2023, its preferred limiting instruction and redactions, accompanied by a letter brief of no more than three pages.

SO ORDERED.

Dated:     New York, New York
           April 20, 2023

DENNY CHIN
United States Circuit Judge
Sitting by Designation